In the wake of the Supreme Court's decision in Gonzales v. Raich, Appellant Rosenthal will not press here any sweeping claim that the federal government lacks the power to regulate medical marijuana even in the intrastate context. But nothing in Raich in any way addresses or weakens the other claims that are raised here as challenges to Mr. Rosenthal's convictions. In one sense, in fact, I think Raich supports and underscores those claims, and that is this. Raich demonstrated the really tenuous hold on legality that federal medical marijuana prosecutions have. Three justices generally extremely supportive of law enforcement held that the federal government has no power to regulate medical marijuana at the state level. The author of the opinion, Justice Stevens, who held that the federal government indeed can regulate medical marijuana, has since declared to the American Bar Association that as a matter of policy he thinks it's a bad idea and should be legislatively limited. So if we're the federal government is going to seek convictions in an area as controversial as this one, it is surely appropriate to ensure that those who are indicted on medical marijuana charges receive a full and fair opportunity to raise all of their defenses to those charges and, of course, receive a trial that is fully consistent with due process. And that did not happen in this case. In a very case-specific manner, there are a number of challenges to the conviction here. I intend to address two of those and sit down after about ten minutes, and Mr. Elford will address the claims dealing with grand jury and jury misconduct, competitive jury misconduct. I want to address the related but distinct claims arising out of Section 21-885 the 21 U.S.A. 885d, the federal immunity statute. And the interplay is close here because on the one hand we are arguing that the court should not have denied the immunity claim. It should have dismissed the conviction on the grounds that Mr. Rosenthal is entitled to federal immunity. That would result in dismissal of the charges. On the other, we are arguing that the court erred in denying Mr. Rosenthal his opportunity to present an entrapment by estoppel defense, which is rooted in 885d, and deals with what a reasonable person under these circumstances, given both the statute and the official advice he received, would believe about the legality of their actions. The second claim, obviously, would not result in a dismissal. It would merely result in a remand for a new trial at which the entrapment by estoppel defense is presented. But one key to both of those claims, and it's one area that we are fully in agreement with Judge Breyer, is that Judge Breyer stated that a literal reading of 885d would immunize Mr. Rosenthal from federal prosecution. And he's quite right there. If you just read the statute and read the face of the statute, Mr. Rosenthal – and this was not denied by the judge in making his ruling – was a public official, a State official involved in the enforcement of a law which relates to controlled substances, that is, marijuana. What the judge said is that there's a literal reading, but it's not the only reading. And Judge Breyer came up with what he thought was a better reading, which is that the State statute in a way that's consistent with Federal drug policy. Well, there's two enormous problems with that view. The first is that this is a criminal statute. If it can be read reasonably, or by a reasonable person, to believe that their conduct is lawful, if it can be read so as to believe that you are not violating the law, then under the rule of lenity, a court must adopt that view. If Congress wants a different statute and wants to be more explicit, it can pass it. Kagan. Kagan. Yes. Why is it a criminal statute? It's an immunity statute. Well, it is a statute that defines when a criminal prosecution can and cannot be brought. I stand corrected. In a sense, it is a criminal procedure statute. It does not define what is criminal as much as it does state who will not be prosecuted for a conduct which might otherwise meet the definition of criminal activity. But it is a statute, Your Honor, that either subjects or does not subject or determines whether somebody is subjected to criminal prosecution. And then the rule of lenity, I would submit, certainly applies. But, counsel, there were certain rather strong evidences that these people could be prosecuted. The California Court of Appeal had hold that the cannabis clubs could not be protected, and this was before he got his immunity from Oakland? Well, Judge Breyer did not address any of those questions. Judge Breyer said, look, your conduct can be perfectly lawful under State law. I am telling you that it cannot be immune under Federal law unless it's consistent with Federal policy. He did not say, I find that you were not engaged under those key words, lawful engagement or lawful exercise, lawfully engaged in the enforcement of law. He didn't say you're not engaged lawfully under State law. He said, fine, you're engaged lawfully under State law. It doesn't make any difference. You don't get the Federal protection. And two quick instances of why, one, I don't think there's any case that has ever said that a literal reading of the statute is not a reasonable reading for the purposes of the rule of lenity. There is no legislative history of this statute that Judge Breyer relied on for his interpretation. He said, well, let's look at what the purpose of other Federal drug laws are. But he did not rely on anything in the legislative history here that would put someone on notice who simply read the statute that they are not immune. To the extent that it's not binding on us, of course, and my question is, what does lawfully engaged mean? It's a little bit of a strange locution in the statute, which is, of course, about only triggered by doing something that's not lawful or otherwise you wouldn't need the immunity. So lawfully engaged must mean something. What does it mean? Well, you can imagine what Congress might have had in mind. You have State drug agents who are allowed to seize drugs, possess drugs, sell drugs as undercover. They're acting unlawfully, so what does lawfully mean? No, no, no. If they're doing that in order to catch criminals, they're lawful. What Congress intended to do is say, you can't – and this has happened, of course you can have a police officer who sees drugs from a dealer and then goes and resells them. He may be involved in a – But what if they do it unconstitutionally? Would that count? Come again? I'm sorry. But unconstitutionally. What if they do it, but they do it unconstitutionally? Or what if they do it, but they do it in violation of some – a different Federal statute? Well, then, Your Honor, quite appropriately, they're in a criminal Federal prosecution under Federal drug laws. They could invoke the linear immunity of good-faith immunity described there. And if they were able to present that defense, that they acted – they had a good-faith belief that was reasonable, then they would have immunity from Federal prosecution. And if they – if they were unable to do that, then they wouldn't have a defense. But this statute – I'm just trying to isolate what lawfully means in this statute. And it seems to me that it must mean something like lawfully, but for the unlawfulness of the – of the direct unlawfulness of the activity that you're engaged in. Well, I would say, Your Honor, that it mean – it has to mean that you're acting lawfully under State law, and you're doing things which are violative of Federal law. You're buying drugs and selling them. No, this definitely says that it's – oh, I see. I'm sorry. Go ahead. Right. So – so it – and the thing here is it's an immunity statute. And one of the things about immunity statutes is that they protect people whether what they do is right or wrong under certain circumstances. You make a policy decision that diplomats will be protected from all criminal prosecutions. The Supremacy Clause and the good-faith doctrine described in Lanier give State and Federal law the ability to protect people from prosecution under certain circumstances, even if they're wrong. This statute – let's face it. In California right now, there are police departments that have a policy pursuant to State law. You go in, you seize marijuana from somebody. If they have a prescription, you give it back to them. Did Congress intend those police officers who were under a directive to arrest people without a prescription or seize their drugs but not arrest them if they have a prescription, did it intend – whether that's a wrongheaded policy or not, did it intend to subject those police officers to Federal prosecution? And a fair reading of this statute is that it did not, is that it did not. You could even have a situation where they're prosecuted – let's say they seized illegal drugs, illegal marijuana from people who don't have prescriptions. Would they have immunity if they're carrying it around? Could the Federal Government say, oh, okay, you seized that pursuant to a State policy which is not in conformity with our laws. You're supposed to arrest everybody with marijuana. You're only – you're enforcing a law which only arrests half those people. Since your Federal and State law is inconsistent with our Federal law, you don't have the right to invoke immunity. And the answer to that would be, under the terms of this statute, they do. Congress probably never contemplated this situation of whether they want to give immunity in a medical marijuana context where a State law is more lax than a Federal law. It can fix the law. But the facial terms of this statute would protect Rosenthal or the highway patrol officer who takes somebody's marijuana and gives it back to them upon seeing a prescription, and immunity should exist. But, of course, that is not the ultimate position that we have, because quite apart from the question of immunity which requires dismissal, we have the question of entrapment by estoppel. And once Judge Breyer, who heard all of this evidence, stated Mr. Rosenthal honestly, credibly, and reasonably believed that his activities were lawful based on a combination, obviously, of 885D and State officials' advice, then there simply is no question that due process requires simply that a jury hear that defense. Kagan. Where is the stopping point on that argument with regard to the statute? There are obviously many, many instances in which somebody may reasonably believe that a statute allows them to do what they have done, but it turns out not to be so. Well, the limit is simply this. Did you – is the belief reasonable, and is it based on official advice in a context in which the official – You're taking the advice to be the statute itself. The advice can certainly be the – well – Any instance in which there's a criminal statute, for example, and I read it or maybe I'm going to ask my lawyer to read it, and he says, no, no, this doesn't apply to you, go ahead and do it, and that's a reasonable reading, therefore, you can't be convicted. Well, actually, Your Honor, under the rule of lenity, that's absolutely true. If there are two readings of a statute, both of which are reasonable, the law obligates the court to accept the view which favors the criminal defendant and says that conduct is not – is not criminal, because since Lanier, since Lanzetta, the Supreme Court has said a person must be on fair notice that their conduct is criminal. We hold people responsible for laws that they might never, ever know about, okay, and subjectively they never learned of them, and they're held responsible nonetheless. The one protection we give them is that if the statute is on its face, something that's capable of being interpreted in two ways, one of which would make conduct not criminal, no, it can't be prosecuted. That's not an escapist offense. That's just a question of how we interpret the statute. That's right, Your Honor. That defense really says you can't be prosecuted at all. Entrapment by estoppel is fact-specific, and it requires the combination of advice from someone who you reasonably believe could give it. And one of the things that you're not standing on – I'm just trying to isolate your argument. You're not standing on the statute itself. When we get to entrapment by estoppel, in a sense, the immunity argument stands on the statute by itself and when you need it. I understand that. The entrapment by estoppel stands on the combination, as was true in Talmadge, of a statute in this case and explicit advice, in this case a statement from a – a written statement from a public official saying under 885d, you are immune for prosecution for medical marijuana activity. And the thing about that is that 885d quite clearly imbues State officials with the power to create immunity. If there's a police department that doesn't exist and it's – a new municipality is started tomorrow, who creates the department and who gives the drug department, the drug officers in that department, the power to engage in undersales of narcotics? It's the State. It's the City. They are the ones who create law enforcement officers. So under the structure of 885d, of course it is State officials that you look to, to see if your belief that you are acting in enforcement of the law and therefore protected under 885d is reasonable. And of course in this case, that's what Mr. Rosenthal got. And one thing that we know is that the judge who heard him testify and heard all of the other testimony in the case said that his claim of a belief in the legality of his actions was both credible and reasonable. We are not under entrapment by estoppel asking this Court to acquit him. We are merely saying that he then had a Sixth Amendment right to present that defense to a jury. And I'm going to attempt to give Mr. Elford some time to address the jury misconduct claim. We would, if possible, like to reserve the briefest time for rebuttal, Your Honor. Thank you. Good morning, Your Honors. What makes this case unique is the systematic exclusion of all community participation from these proceedings. And it was only through this systematic exclusion of the community that the government was able to obtain its convictions. At the first invitation for questioning before the grand jury, the grand jurors peppered the prosecutor with 15 questions, touching on such questions as, is this the first case where the government is going after the cannabis clubs? In order to realizing that its indictment was in peril, in order to persuade the grand jury to issue the indictment, the Federal government lied, first mentioned that the indictment doesn't include the Harm Reduction Center, and more importantly said, we have not sought to shut down the operations of the clubs. It is operating. The district court found that the prosecutor's statements in this regard were false and apparently calculated to overcome grand jurors' concerns. It then was able to salvage the conviction only by ignoring the dual function of the grand jury. A grand jury, as this Court has repeatedly recognized, is not just to consider a probable cause, but to also to quote United States v. Marcucci, reject an indictment that, although supported by probable cause, is based on government passion, prejudice, or injustice. These jurors, these grand jurors were getting to the fact that this indictment was based on injustice. It was only by deceiving them about the continued availability of marijuana through the cannabis clubs that the Federal government was able to convince them to go ahead and issue the indictment. So what exactly was the deceit? My understanding is that the – there had been a raid shortly before, and – but that the club was operating again, is that correct? It was approximately two weeks before. There was a raid on the club. As the declaration of Henry Carnilowicz states, he found the doors of the club padlocked. All of the marijuana had been taken from the clubs. And although no indictment was issued, they cleared out the inventory and the club was shut down. But this was not the only instance where the community conscience was eliminated from these proceedings. There was also the juror misconduct. And what that had was even despite the limited evidence that was presented to the jury, two jurors were so troubled by the proceedings that they went and elicited the advice of outside counsel, a friend of one of the jurors, and was told that there was nothing else she could do but to follow the instructions. And when she persisted, asking about a hung jury, the attorney erroneously advised her, you could only do that if there was some leeway in the judge's instructions. And then he followed up with, I could get into trouble if I tried to do something outside those instructions. This was a highly coercive and erroneous instruction. No court would do this, would threaten the specter of punishment to a juror in open court. And that's precisely the major problem here. There was – we don't know exactly precisely what was said. There was no opportunity to correct the error. There was no opportunity for the defendant to be a participant in what was told to these jurors. And these jurors were therefore coerced into issuing the verdict that they did. At a minimum, at a minimum, it affected their deliberations. They clearly were intent on pursuing this issue. They went outside the judge's instructions to pursue the issue with outside counsel. They would have in all likelihood pursued the specific language that you claim had the coercion in it. The specific language, which is at ER 261, was, I could get into trouble if I tried to do something outside those instructions. And this is coupled with the other coercive language, which is that she was instructed that she had to follow the instructions and there was nothing else she could do. But it was specifically the specter of punishment, of getting into trouble, that was most coercive, most likely to cause these jurors to be affected in their freedom of action as jurors, which is the standard. And as this Court has recently emphasized in Caliendo v. Warden, it doesn't have to be a statement that directly touches on the facts of the case or the law applicable to the case in order for the burden-shifting of remor to occur. And the reason this is so hard and interesting is that the coercion, which here it seems there was, was with regard to following the court's instructions. So it you are right in the middle of issues concerning jury nullification  where the court could go or did go with regard to advising jurors not to do anything other than what they're instructed. Now, this was outside the court's instruction and it wasn't the instruction that was given. But it still makes the evaluation of the impact or the prejudice odd and difficult. So how do we go about evaluating whether there was prejudice in coercing somebody into doing something which, at least according to the instruction she was given, she was supposed to do anyway? Well, and that's where it gets to be a very nuanced distinction that the courts have made. The courts have rejected an expressed instruction of the jury on jury nullification. The courts generally say you can't second-guess the law itself. But the nuanced distinction that they make is that there ought to be a play in the joints, as you will, that while not judging the law itself, that you can judge the entire situation. The law has applied in the context of a specific case. And that the play in the joints language comes from United States v. Doherty and is precisely the type of language that the Court affirmed in United States v. Marcucci and more recently in United States. Kagan. Marcucci was superseded by Navarro-Vargas. And more recently, the courts have reaffirmed that distinction between must versus should in the case of United States v. Navarro-Vargas. And what all of this leads to is, ultimately, while there's no instruction that ought to be given to a jury about jury nullification, you also will tell them they must follow the law, although there may even be some questions with that. It's when the possibility of jury nullification is absolutely foreclosed. And it was foreclosed both by the Court's own instruction about not bringing their sense of justice to bear on this case, but more troubling still, it was absolutely foreclosed by this erroneous instruction from an outside attorney that you would actually get into trouble if you were to exercise your conscience in rendering a decision. Thank you, counsel. I'd like to reserve a moment for rebuttal. I'll give you a minute. Thank you. Good morning. May it please the Court, I'm Amber Rosen representing the United States in this matter. The district court worked very hard in this case to ensure that the verdict would rest on the law and the evidence produced at trial. To achieve this, the Court determined whether defendants' proffered evidence regarding, for example, why he was growing marijuana or whether he believed he was immune from prosecution went to any element of the offense. And because it did not, he determined it was not relevant to the jury's determination of guilt or innocence. It found that it was relevant, however, to the Court's determination of punishment and considered it for purposes of sentencing. While we, of course, disagree with the extent that these factors were considered for purposes of sentencing, which I will discuss in a moment, the district court's overall approach of considering defendants' nullification evidence for punishment but not for guilt was correct and should be affirmed by this Court. I want to first turn to the issue of sentencing. We've argued in our briefs and we continue to contend that the district court clearly erred both in finding that defendant was not in the leadership role with respect to the Mandela Grow site and in finding that the defendant, in good faith, reasonably believed he was immune from Federal prosecution. I don't want, however, unless the Court has questions about that, to spend more time discussing why that's so, as I think it's pretty well laid out in the brief and I don't have too much more to add to it. Kagan. I'm sorry. My which is so. What's the that? That as to why the – as to the fact that the district court erred in terms of both of those basically guidelines issues. And instead – yes, ma'am? Stop right here. I know you want to get back to the sentencing and I'll allow you to do that. Sure.  I'm just wondering if there was a good faith reason to believe that he didn't think he was violating the law in not allowing him to put on evidence in – before the jury. No. And the reason is because the entrapment by estoppel defense, which he excluded from going to the jury, is a two-pronged defense that the defendant must show a preliminary showing before it goes to the jury. And the first prong is what the court found the defendant didn't meet. And that first prong is that there is affirmative misleading – that there is affirmative misleading by an authorized government official empowered to give the erroneous advice. The second part of the test is that the defendant then reasonably relied on that advice. And what the district court found was that no Federal official, which is what is required in order to stop the enforcement of Federal law, no affirmative misleading statement was made by any Federal official. Mr. Reardon said something this morning that I don't remember being as brief, which I think is interesting, which is that this particular statute, the immunity statute, recognizes essentially that State and local officials can provide immunity because it's State and local officials who can authorize somebody to act illegally. So why wouldn't the State and local officials under this particular statute be relevant people with regard to the question of whether this person is authorized or not authorized? Well, I think that goes in part, Your Honor, to the question that you raised before about what does it mean to be lawfully engaged. You have to be lawfully – I think in part what it means is that you are a person who is authorized to enforce controlled substances laws. And generally, the term enforcement relates to having the power to prevent or require someone to do something under the law. And generally, it's believed, I think, to include such things as the power to arrest and other things like that. So cities – Kagan. Going off, I think, in a split, we'll come back to this. But for present purposes – Yes. That is, for the question of who – for purposes of the equitable estoppel defense has authority to authorize something or to inform you on it. Right. And why is any of this relevant? Why isn't the larger point, as in the drug dealer – in the firearms dealer cases, for example, that this particular statute seems to give some authority to State and local people? I don't think it gives them any authority as to determining what acts are immunized under the Controlled Substances Act. I think it recognizes that cities and States are the ones who determine those who are police officers or law enforcement officers with the – and can define what constitutes a public official for purposes of enforcing its laws. But that's not to say that the State or the local government can determine what conduct or that it can carve out an exception for conduct that is clearly unlawful under the Federal Controlled Substances Act. I want to correct some things that the defendant said in this regard, which I think are simply not supported by the record. The first was that he found – that he stated that the court found the defendant was a public officer. I think – and I want to make two points about that. One, that he was not a public officer, so to the extent there was any finding, it would be erroneous. But more importantly, that the court specifically did not find that. In fact, if you look at the excerpts of record at 307, lines 6 and 7, the district court actually – I'm going to pull it up as well – said, while it may be maintained that the defendant did not fall within the protection afforded by the ordinance since he was not an officer of the city of Oakland, and then he goes on about what's significant for sentencing purposes. In his order, the court – in the written order, which is at the excerpts at 315, the court specifically says, in somewhat contradiction to that, that the question was not adjudicated and that there was no finding about whether he was a public official or not. So there's some contradiction in the record, but it's clear that he did not find that he was a public officer. The city of Oakland said he was. Isn't that right? That's true, although the city of Oakland also specifically recognized that under the city charter, they did not have the authority to make him a public officer. And so instead, they – under the ordinance, it created a different definition of what public officer meant and said officer meant designee and specifically said not within the meaning of officer is in city charter. So that goes again to the lawfully engaged point, which is that only certain city officials or public officials are authorized or lawful or can lawfully enforce controlled sentences act. And because the defendant was not in fact a public officer as defined by the city charter, he could not be, quote, lawfully engaged in enforcement. He didn't have those kinds of duties. There was a case, a district court case, not in California, and I'm – I can give this side to the court later if it wants. I'm afraid I don't have it off the top of my head. But where the issue – where it actually discussed the lawfully engaged problem because there it was a mayor who was claiming immunity under 885D. And in that case, under the city charter designating the powers of the mayor, the mayor was not authorized to enforce drug enforcement, drug statutes. And so the court found the mayor wasn't lawfully engaged. Kagan. The question of who's authorized is certainly a question of State or local law. What about the question of what's an officer? Is that a State or a Federal question? How do we know what is an officer? Well, I think what constitutes a city officer would be city law about that. And it wasn't – he wasn't a city officer under Oakland's law. I think, too, the lawful part – I think Judge Breyer also discussed that slightly differently, but in a way that's also correct, and said when you look at the overall intent of this immunity statute, the overall intent is to further enforcement of the Federal Controlled Substances Act, because only those are immune are people who are engaged in the enforcement of a controlled substance. So you can't be – Or a force. Right. But that – given that it's in the Controlled Substances Act, you can't be lawfully engaged in such enforcement if the underlying law you're enforcing is inconsistent with the Controlled Substances Act, which this one is. It's unlawful under the Federal Controlled Substances Act. And how can you be lawfully engaged or get immunity for enforcement of such a statute when the entire statute that you're trying to enforce is itself illegal under the Statute? What if you're enforcing a statute that turns out to be unconstitutional? What if there's a local statute, a controlled substance statute, and it turns out to be unconstitutional, so the immunity disappears? Well, I think that that underlying law was still in – I'm sorry? I'm sorry. Did you want to add to your question? Because it's then an invalid local statute in terms of Federal law. I think the question, and I think Judge Breyer got this right, is that if the law – if the law is otherwise unconstitutional, it doesn't have anything – but it is consistent with the Controlled Substances Act, that would be a different circumstance. But this law is itself, on its face, illegal under the Controlled Substances Act, at least as that's interpreted by – yeah. I think what's disturbing is that you're – at least I'm more comfortable when you can link a statutory interpretation to something in the statute. Right. And the only possibility here is that we're termed lawfully. And, therefore, you have to give some consistent interpretation to the term lawfully, and where would you get the fact that it is attached to the Controlled Substances Act and not to something else? Well, I think you're perhaps right. I mean, I think the – Judge Breyer's reliance on its being illegal under the Controlled Substances Act was really a matter of statutory interpretation of what the legislative intent of this section was. And that the law – and I think the lawfully engaged really goes to are you a person who, by virtue of law under the city that, you know, you're enforcing these laws for, are you a person who's lawfully authorized to enforce the drug – to enforce drug laws. So, I mean, I think there's four different ways in which he's not immune under the statute. The first is what Judge Breyer said in looking at the general overall legislative intent of 885d. The second is that the defendant was not, in fact, a public officer. And even if the city of Oakland intended to make him one, even if he believed he was one, in order to get the protection of the statute, you have to actually, in fact, be a public officer. And as that's defined by Oakland City Charter, he was not. He, therefore, was not lawfully engaged and could not be by virtue of the fact that he was not a law enforcement officer. He could not be lawfully engaged in the enforcement of drug substances laws. And finally, what his actions were doing were not enforcement. In what he was doing, and the city council even says that in the city attorney in its opinion to the city council, says what these, what we're authorizing really is about implementation or administration of the ordinance, and that's different from enforcement. And I think, in fact, that's true. It is different from enforcement. For each of those reasons, I believe that he doesn't get immunity. And I also want to clarify one other factual point, which was that the defendant in support of his position says that the court found that his conduct was lawful under State law or under Proposition 215, and that is simply an incorrect statement of California law. And the district court acknowledged that, and that's in its denial of the motion for new trial order at ER 293 and footnote 5. It specifically says his conduct was not lawful even under the State laws. So I want to return for a moment. I guess while we're on the immunity issue, I will address the entrapment by estoppel defense. I think I don't have too much more to add on that, but I think he cannot rely on the statute itself, because his own subjective interpretation of the statute and its reach is not an affirmative statement by the Federal Government. Rather, it's just a mistake of law, and a mistake of law is never a defense. And the Ramirez-Valencia case talks about that. United States v. Lansing talks about that and says, For it is clear that more is required than a simple showing that the defendant was, as a subjective matter, misled and that the crime resulted from his mistaken belief. This is a case of his personal interpretation of the statute. And that's in contrast to many of the cases cited by defendant in which what the defendant relied on was statements of Federal officials interpreting the statute. That's the Cox case and Talmadge and Brady. Or a Federal court interpreting the scope of the statute where the facts are similar, such as in Albertini. Or even of a Federal agency providing regulations or publishing a form whose specific intent is to provide guidance as to the scope of the statute. And that would be the Penn Chemical and Battergy case. But this is simply defendant reading the statute and feeling, I think I fit the definition. And that is simply a mistake of law, which does not provide a defense. As to what the city officials told him, under this Court's decision in Brebner, one is not entitled to rely on any representations made by State or local officials because these officials lack the authority to bind the Federal Government to an erroneous interpretation of Federal law. And that's the situation here. There was a whole evidentiary hearing held, and the Court specifically found that based on that testimony, no Federal official ever made representations of immunity to defend it, that the city officials knew that they had never consulted with any Federal official they didn't represent to be acting on behalf of any Federal official. And so the defendant simply provided no evidence to support the defense going to the court. Returning now, excuse me just for one moment, to the sentencing issue. What I want to focus on here is the reasonableness of the extent of the departure. Because particularly in light of Booker, should we lose on the guidelines issues, reasonableness of the overall sentence is going to be the test. So I think reasonableness is where the discussion ought to start. Determining what is a just sentence or a reasonable sentence is a difficult task. And the determination of what is just or reasonable will inevitably vary from person to person or judge to judge. And this is why, in part, Congress established guidelines. And it is why a judge must be guided by congressional intent in determining a sentence. Otherwise, sentencing disparity will inevitably result among defendants convicted of similar conduct. Congress has given several clues about what kind of sentence it thinks is reasonable in the context of large-scale marijuana cultivation. And while we may not always agree with Congress's judgment in these regards, courts remain, in good measure, still bound by it, within, of course, some limits of discretion. So in this case, normally defendants who have grown as many plants as the defendant did in this case are subject to a five-year mandatory minimum, and they are not eligible for probation. In addition, even those who received a safety valve, as the defendant did in this case, are not to receive a guideline level of less than 17, which corresponds to a minimum sentence of 24 months. And Congress's intent to impose a floor for these cases, I think, is indicative of its intent that large-scale cultivation be treated as a serious offense with a commensurate sentence. Kagan. Is it your understanding that we ought to be reviewing this now under Booker and directly? Because if we are reviewing it directly under Booker, as opposed to reviewing it as a departure under the guidelines, which makes sense to me. I don't know why we would be reviewing it as a departure under the guidelines if the guidelines are no longer mandatory. Well, the guide no – I mean, I guess my question, my answer to your question is no and yes, which is to say I do think you need to still look at it under the guidelines, even though they're advisory. This Court in Kimbrough basically said, look, since under Booker, you need to consider the guideline calculation. Well, I understand that. What about departures? What sense does it make to be looking at departures from the guidelines as opposed to the guidelines themselves? We've done all the guideline calculations. Right. Now the question is, he departed from the guidelines because he thought they were mandatory. If they're not mandatory, he doesn't have to justify it as a departure from the guidelines. So why are we looking at a departure from the guidelines? Well, I think the guidelines still give some guidelines as to what kinds of things are – should be considered or to the extent whether they're disfavored in terms of how they're considered. And, of course, then there are the factors under 3553A, which may or may not encompass all the other factors that can be or should not be looked at under departure. So I'm not sure that it's completely irrelevant to look at that. Are you aware of any post-Booker case law that looked at the guidelines for the purposes of determining whether a departure was proper under the guidelines? I'm not. And I do agree. I mean, and one reason I'm focusing more on the reasonableness of the departure rather than the legality of the departure is because I recognize exactly what the Court is saying, which is that some sense the ability to part is not so important now in a post-Booker world. So we do ask this Court to look at the – at the – whether the district court erred in terms of applying the safety valve, because that is just a guidelines calculation question. I think when it gets to departure, not that we're abandoning our argument altogether about the erroneous factual basis for it, but I do think ultimately that it's – the Court's time is better spent, as I was hoping mine was, on the reasonableness of the extent of the departure for that very reason. Counsel, I don't think we want to determine reasonableness now at this level. Wouldn't we just send it back and say, do a Booker analysis? Yes. I think what you would look at now is to say the reasonableness. We don't – we think the extent of the departure was not reasonable, and the sentence needs to be remanded in light of Booker. That's true. I mean, this Court could, if it wanted, also say, and in any event, we don't think this is a reasonable sentence under Booker, and so we're remanding it for that purpose. It could do one or both of those things in some sense. But I was asking, and the reason I stopped you is that I don't see any sense in our deciding whether it was a reasonable or unreasonable departure. Unlike the question of whether or not the guidelines apply and what – and what level they would yield and so on, there doesn't seem to be any sense in a post-Booker world in our deciding whether this was a reasonable departure under the guidelines as opposed to simply remanding. Right. I agree, because otherwise I think we're going to be in the exact same position. That is to say, then the district court will do it under Booker, and then we'll be back here appealing, saying, well, it's not reasonable. At least we won't be worried about whether or not there was a departure, if appropriate. Right. So I do think just as a matter of expediency to some extent, you may as well decide the overall reasonableness if you get to that. In other words, if you find that we do not prevail on the safety valve issue. Yes. I know you've used your time, but do you have any response you want to make to the juror misconduct argument that was made by counsel? I would like to. And also on the grand jury issue of misconduct of the prosecutor. Yes. And I appreciate the Court giving me more time to do that. I'll take those in turn. Let me turn first to the petty jury question. As the district court found, and as this Court indicated, any potential prejudice from any of the statements the lawyer made to the juror was to interfere with the juror's inclination to disobey the court's instructions. And finding error from this is irreconcilable with the court's role in preventing jury nullification or in having jurors follow the law. Except that the one thing we don't do is tell people that they're going to get in trouble. That's true. And isn't that really kind of the line that's been struck? The recognition that ultimately the secrecy of the jury means that we will inform people as to what they're supposed to do, but we won't investigate whether they've done it or punish them for not doing it. By secrecy, you mean Rule 606B? No, I mean in general secrecy, yes. Okay. Well, I think at most, even the comment about trouble, at worst, what it did was diminish the juror's sense of her power to nullify. And I think it's very important to distinguish between the power to nullify, which is to say that jurors always have that right and there really is no governmental recourse against their doing it. The government doesn't have a right to an appeal in a court. But it's just that she was told there was recourse. That's how the balance was tipped from what the usual balance is. But even if that were so, I think it's not completely accurate to say that in the sense that there is some indication, at least out of the Eleventh Circuit, that a juror could be dismissed, for example, for refusing to follow the law by contacting somebody for whatever reason there was a disobey of the court's order, which could conceivably be a contempt of court. In other words, the statement about trouble is pretty ambiguous. It's not completely clear that it's completely inaccurate. But even taking it as worst interpretation, the most that it would have done, the most prejudice it could have exerted was to diminish the juror's sense of her power to nullify. It couldn't affect her right to nullify because she has no right of nullification. Kagan. Kagan. Couldn't it also diminish her willingness to look at the evidence in the way that she would otherwise look at it for fear that she would be taken to be nullifying? Well, I think that's reading the trouble. Getting in trouble? No. I don't think so. I mean, there was certainly the what her friend told her was you need to follow the court's instructions. And the court's instructions in no way indicated, there was no statement that had anything to do with coercing all the jurors to come to an agreement or anything like that where, you know, a lot of these cases come up, which is about you have to come to a verdict or you have to agree with the other jurors. And so really what it was going to was her own sense of could she ignore the law. And I think to the extent that he indicated, I'm sorry, Your Honor, did you want to? I'm going to say, let's think about putting the shoe on the other foot. And sometimes the government wants a position that's going to hurt them in other cases. What if the lawyer said, oh, you always have the right to go with your conscience and you can nullify that set of instructions if you want to? Now, wouldn't the government then be in saying that there had been jury tampering? Well, we wouldn't have an ability to and appeal that. So we wouldn't be in a position to do that. I think it's not. But I think what the really important point is that a defendant's constitutional rights are not violated by a juror's diminished sense of her ability to nullify. I mean, she has no right to nullify. So even a threat that she could get in trouble for doing a right she doesn't have is not the same. But she has the power to do it without being punished. That she has. That's true. So to the extent that he is making her feel like she might get in trouble for exercising that power, he's diminishing her sense of power. But because it's not a right, I don't think her diminished sense of power can infringe a defendant's constitutional rights. I mean, the Supreme Court has held due process means a jury capable and willing to decide the case solely on the evidence. And that's what defendant got. He may have wanted jurors who had a greater recognition about their power to nullify, but he didn't get that, and I don't think he can constitutionally complain about that, even if the juror's sense of her ability to nullify was even erroneously diminished by the outside influence. Do you want to briefly talk about the grand jury? Yes. Thank you. About two minutes' worth, and then we'll wrap it up. I think it's important to look at all of the alleged misconduct in the context of the entire transcript. First of all, if you look at the conduct about or the statement about shutting down the cannabis clubs, that was made in response to the question, is this the first case where you're going against cannabis clubs? And the prosecutor was basically answering by saying, well, we're not prosecuting the cannabis club in this particular case. And it's in that context where he talks about that. I think it's important to keep in mind that all of the alleged misstatements about whether there's prior prosecutions, about what the State law is, about whether it was for medicinal use, about the availability of medical marijuana, none of that's relevant to the determination of probable cause. It's all relevant to the issue of nullification. And the grand juries have two roles. They're the conscience of the community. And back in Prohibition days, they couldn't get indictments. Well, this case has recently reaffirmed the Marcucci holding. And, you know, I recognize there was a strong dissent in that case. But in Navarro-Vargas, this case — Actually, the opinion is very interesting, because as I read it, what it actually says is that, yes, they do have this role. And it is — this goes back to what we were talking about earlier, that it is within the realm of the fact that nothing is going to happen to them if they do it. And that they — so it wasn't denying that there is a role for the jury, the grand jury, in doing this. But they were looking at it as a very carefully balanced and nuanced system, where the jury had this authority, but wasn't encouraged to use it, essentially. True. I mean, there's many — you know, there's cases holding that the grand jury isn't entitled to exculpatory information. It's not entitled to legally irrelevant information, which this is. But also, you know, taking your point and recognizing that, you know, of course they have no right to be instructed about nullification. Let's look at what the grand jurors were told about what the defendant was doing. They knew that he was growing the marijuana and that he claimed it was for supplying the cannabis clubs, and that he was growing it for solely medicinal use. That's at ER 223. The grand juror asked, well, he's doing this for medicinal reasons, though, right? And the witness says, they're being distributed, yes. The grand juror says, so they say. And the witness said, yes, so they say. He was told that the Federal Government was targeting suppliers. The prosecutor told the grand jurors, the focus of these cases and other cases that we have in the office here has been on the supply side. So there was no attempt to let them think that this was somehow an anomalous case, and it wasn't. The grand jurors were informed that the clubs were in various ways being targeted by the Federal Government. The agent testified, it's been in the news that there's been additional searches, which indicates additional investigations. And they were told about the injunction against the Oakland Cannabis Clubs and told that the context of that case was an injunction where DOJ sought to shut the club down, and it was a civil injunction filed against multiple locations. They were aware, of course, of the raid of harm and that it was a part of this case. They were, when they were asked about whether they were blazing new ground by going after growers like Rosenthal, they were told by the prosecutor, this is at ER 244, we prosecute growers. So, you know, of course we disagree with the district court's conclusion that there was misleading or even false evidence given about the availability of medical marijuana, and that's in our motion for reconsideration. But I think, you know, the point is the grand jury certainly was aware of the defendant's defense, and in spite of that, I mean, the question really is, were they prejudiced or coerced to return the indictment? Was their independence infringed? And I think when you look in the context of all that was disclosed to them, and when you look at the fact that the foreperson even made an explicit statement about, well, you know, this is the Federal law, and until that, you know, we can't change it by what we do in here. That's, I'm misquoting a little bit. But it was basically recognizing the difference between following the law and voting despite the law. The grand jurors returned the indictment. So I really think that's evidence that their independence was not infringed. Okay. Thank you very much. Thank you. And we should continue. I promise I can do this in less than two minutes. Well, not only that, you can have about four or five, because she ran well over. The points are these. I did not say that Judge Breyer found that Rosenthal was an officer or found that he was lawfully engaged under State law. What I said was that none of that mattered to Judge Breyer. Judge Breyer said California can pass a statute and give the Governor the exclusive power to distribute medical marijuana. He can be doing it in perfect conformity with State law. It doesn't make any difference whether he's an official or not or whether his performance is lawful under State law unless it's consistent with Federal law. I understand that. But the question is what should we say. So the question is that we still have to decide whether he was or wasn't an officer. Well, no, Your Honor. I would suggest this. I would suggest that if you find that Judge Breyer was wrong in saying that in his interpretation of 885d, then the case should be on the immunity question, should be reversed and remanded for a factual findings on that, because I don't think the Court on this record is in a position to make a factual determination whether or not he was an officer without having heard the evidence. So my position would be if Judge Breyer's reading of 885d is wrong and the immunity depends on factual questions such as whether Rosenthal was an officer, the case should be reversed and remanded on the immunity question. Was there a hearing originally? Oh, there was plenty of hearings where Rosenthal testified about who he was and who he wasn't. But there was another one. Why does it have to be another one? Because Judge — well, perhaps Judge Breyer doesn't have to make — hold another hearing, but I think he does have to address those factual questions. I think he felt it was unnecessary to opine on them, because under his view of 885d and the fact that it has to be lawful under Federal law, all the factual questions were irrelevant. Point number two, Judge Breyer's interpretation is, quite frankly, makes no sense in this sense. If lawfully engaged in the enforcement of a State law means engaged in the enforcement of a State law in a way that's lawful under Federal law, then the entirety of 885d is utterly meaningless, because if what you're doing is lawful under Federal law, then you don't need an immunity statute. It makes no sense at all. At a minimum, the discussion that this Court had with the government about what lawfully engaged means, means that the term lawfully engaged is ambiguous. Certainly, you can say lawfully engaged in the enforcement of a State law means lawful under State law. If the Court is going to say maybe there's another reading, a reasonable reading, then it's ambiguous. And the moment that that statute is ambiguous, the rule of lenity under Bass kicks in and the defendant gets the benefit of the reading that's helpful to him. The government said something very important on the — to pass the entrapment by estoppel question. It said Judge Breyer determined that the entrapment by estoppel evidence was not relevant to the elements of the crime and therefore should be excluded. That's exactly what he did and that's exactly why he's wrong, because this Court's jurisprudence has said time and time again that entrapment by estoppel is an affirmative defense. It doesn't go to negate the mental state of the crime, which in this case is merely cultivation or possession of marijuana. It's an affirmative defense, not a subjective offense, that's based on the conclusion that someone was reasonably misled by public officials. So to the extent that Judge Breyer excluded because it wasn't relevant to the elements, he's dead wrong. The State really has to — the government really has to rest its position on one thing, his statement that it has to be a Federal officer. Well, there's a couple of problems with that. It's a Federal statute here that, combined with State officials, misleads. In Talmadge, this Court said it was a combination of advice from a Federal officer, a State judge, and a lawyer that led to a reasonable belief in the legality of its actions. So it doesn't have to be a Federal officer, and here is the utterly mindless result that that would lead to. Let's say you have a turf battle between Federal drug officials and State drug officials. That goes on all the time. The Federal drug officials go in and they just arrest every State drug official in San Francisco or San Diego or anywhere else, and they prosecute them for making undercover sales. And they then — a prosecutor says to the Federal judge, bar them from even informing the jury that they're State drug officials because it's irrelevant. They had the drugs and they knew they had the drugs. Don't let them inform that because that's entrapment by estoppel, and they're not allowed to say, hey, we're State drug officials who were empowered to do this by State law because we, the Feds, didn't tell each one of those officers that they could sell drugs. That's nonsense. 885d was clearly intended to give the State the power. Kagan. In that instance, then they're directly under 885d. Hmm? In that instance, they're directly under 885d the way you've just set it up, and there wouldn't be an estoppel defense. So you're — what's odd about what you're doing with the 885d and the estoppel defense is you're taking 885d and then you're saying as long as you reasonably read 885d, so you're creating a sort of 885d light out of the estoppel defense. Well, the truth is, 885d is the — in a sense, there's a mirror. Entrapment by estoppel is a trial defense you present to the jury. 885d is merely elevating a trial defense to an immunity that protects you from even being prosecuted if you, in essence, rely or are empowered by State law to engage in drug activities. In fact, in my hypothetical, Your Honor, under the government's view, those undercover sales are not protected by 885d because selling drugs by State officials is in violation of Federal law. And it is — selling drugs is not in conformity with Federal law, except 885d says if you're a State official engaged in the enforcement of State laws, we'll give you a break from Federal laws. Okay. Thank you very much. Thank you. Thanks, counsel, for a well-argued and interesting case. Thank you. We'd like to hear a little from the other counselors. Yes. Do you have something briefly to say? I was just going to make one joint comment on behalf of both of us on the misconduct issue, which was just that we cannot have juries told secretly without the court or lawyers knowing that they can get in trouble for anything that goes on in a jury room without at least raising a presumption of prejudice that has to be rebutted if the conviction is to stand. Thank you.
judges: B .Fletcher, Gibson , Berzon